**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA SUMMERS | ) | CASE NO. |
| 13495 Middlebrook Boulevard | ) | |
| Brook Park, Ohio 44142 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| I DON'T ALWAYS EAT PIZZA | ) | |
| COMPANY, LLC | ) | **JURY DEMAND ENDORSED** |
| 500 East Royalton Road | ) | **HEREIN** |
| Broadview Heights, Ohio 44147 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| I DON'T ALWAYS EAT | ) | |
| PIZZA COMPANY, LLC | ) | |
| c/o AMY T. BLOSSER | ) | |
| Statutory Agent | ) | |
| 308 N. Main Street | ) | |
| Spencer, Ohio 44275 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JOHN O'KEEFE | ) | |
| 28517 Windsor Drive | ) | |
| North Olmsted, Ohio 44070 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ROBERT C. BRAUN | ) | |
| 3786 Zenith Lane | ) | |
| Litchfield, Ohio 44253 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Andrea Summers, by and through her undersigned counsel, as her Complaint

against the Defendants, states and avers the following:

## PARTIES

1. Summers is a natural person and resident of the City of Brook Park, County of Cuyahoga, State of Ohio.

2. Defendant I Don't Always Eat Pizza Company, LLC ("Romeo's") is a domestic, limited liability company organized under the laws of the State of Ohio, with a principal place of business located at 500 East Royalton Road, Broadview Heights, Ohio 44147.

3. Upon information and belief, Defendant John O'Keefe is a natural person and resident of Cuyahoga County, Ohio.

4. Upon information and belief, Defendant Robert Braun is a natural person and resident of Medina County, Ohio.

5. Romeo's is, and was at all times hereinafter mentioned, Summers's employer within the meaning of the Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. § 2620 *et seq.*

## JURISDICTION & VENUE

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Summers is alleging a federal law claim under the FFCRA.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. This Court has personal jurisdiction over Romeo's pursuant to Ohio Revised Code Section 2307.382(A)(1), as Romeo's has and continues to transact business in the State of Ohio.

9. This Court has personal jurisdiction over O'Keefe and Braun pursuant to Federal Rule of Civil Procedure 4(k), as Defendants are subject to the jurisdiction of a court of general jurisdiction located within this federal judicial district.

## <u>FACTS</u>

10. Summers is a former employee of Romeo's.

11. Summers worked for Romeo's as a Shift Manager from May 4, 2019, until Romeo's terminated Summers's employment on or about August 12, 2020.

12. The United States Congress passed the FFCRA into law in or around March 2020, and the FFCRA became effective beginning on April 1, 2020.

13. Romeo's is a covered employer under the FFCRA.

14. Summers is an eligible employee under the FFCRA due to her length of employment and her need to care for her minor child whose school was closed due to COVID-19.

15. On March 12, 2020, the school which Summers's child attended was closed due to COVID-19 restrictions.

16. On April 9, 2020, Summers asked Romeo's for FFCRA leave because she required leave to care for her minor child whose school was closed due to COVID-19 ("First Request for FFCRA").

17. Romeo's refused Summers's FFCRA leave, stating it did not offer such leave.

18. Romeo's refusal of the First Request for FFCRA was done with the intent of interfering with Summers's FFCRA rights.

19. Romeo's refusal of the First Request for FFCRA constitutes interference with her FFCRA rights.

20. Romeo's refusal of the First Request for FFCRA constitutes a restraint upon her FFCRA rights.

21. Romeo's refusal of the First Request for FFCRA constitutes prohibited conduct under the FFCRA.

22. Romeo's did not post a notice of FFCRA requirements in a conspicuous place on its premises ("Romeo's Failure to Post Notice of FFCRA").

23. Romeo's did not email or direct mail a notice of FFCRA requirements to Summers.

24. Romeo's did not post a notice of the FFCRA on an employee internal or external website.

25. Romeo's failure to post a notice of FFCRA requirements constitutes interference with Summers's FFCRA rights.

26. Romeo's failure to post a notice of FFCRA requirements constitutes a restraint upon Summers's FFCRA rights.

27. Romeo's failure to post a notice of FFCRA requirements constitutes prohibited conduct under the FFCRA.

28. Because Romeo's did not post a notice of FFCRA requirements, Summers was not aware of her FFCRA rights.

29. Summers contacted the Ohio Department of Labor to educate herself on her FFCRA rights.

30. On or about April 13, 2020, Summers emailed O'Keefe and Braun, Romeo's owners, stating: "What do I have to do to take the time off while my 11 year old['s] school is closed." ("Second Request for FFCRA").

31. O'Keefe ignored the Second Request for FFCRA.

32. Braun ignored the Second Request for FFCRA.

33. On or about April 14, 2020, Summers notified O'Keefe and Braun in an email that she qualified for FFCRA leave ("Third Request for FFCRA").

34. Braun ignored the Third Request for FFCRA.

35. O'Keefe ignored the Third Request for FFCRA.

36. On or about April 15, 2020, Russell D. Hastings, a Wage and Hour Investigator with the United States Department of Labor, emailed Summers that her employer, Romero's, was covered under the FFCRA, and that Summers was eligible for FFCRA leave.

37. On or about April 15, 2020, Summers forwarded the Hastings email to O'Keefe to prove she was eligible for FFCRA leave ("Fourth Request for FFCRA").

38. On or about April 15, 2020, O'Keefe texted Summers that he received the Hastings email and he would "give this information to the rest of our group and we'll see what we can do."

39. O'Keefe's reference to the "rest of our group" meant the persons associated with Romeo's who were responsible for making employment decisions.

40. The persons associated with Romeo's who were responsible for making employment decisions included Braun.

41. On or about April 17, 2020, O'Keefe emailed Summers that Romeo's could approve Summers's FFCRA request, contingent upon Summers providing documentation from the school ("O'Keefe's Contingent Approval of FFCRA").

42. Prior to O'Keefe's Contingent Approval of FFCRA, Summers provided O'Keefe, in writing, her name, the dates for which she requested leave, the reason for the leave, the name of her child, the name of the school, and a statement that no other suitable person was available to care for her child.

43. O'Keefe's Contingent Approval of FFCRA was designed to dissuade Summers from requesting and taking FFCRA leave.

44. O'Keefe's Contingent Approval of FFCRA constitutes interference with Summers's FFCRA rights.

45. O'Keefe's Contingent Approval of FFCRA constitutes a restraint upon Summers's FFCRA rights.

46. O'Keefe's Contingent Approval of FFCRA constitutes prohibited conduct under the FFCRA.

47. On or about April 20, 2020, O'Keefe demanded from Summers documentation from the closed school stating that Summers's child "needs additional help" from Summers to complete schoolwork. ("O'Keefe's Additional Demand")

48. O'Keefe's Additional Demand was designed to dissuade Summers from requesting and taking FFCRA leave.

49. O'Keefe's Additional Demand constitutes interference in Summers's FFCRA rights.

50. O'Keefe's Additional Demand constitutes a restraint upon Summers's FFCRA rights.

51. O'Keefe's Additional Demand constitutes prohibited conduct under the FFCRA.

52. Summers made several attempts to obtain documents from her child's closed school.

53. On or about April 24, 2020, the school emailed a message to all parents that Ohio Governor Mike DeWine extended the closure of all schools through the end of the school year ("April 24, 2020 BCSD Update").

54. On or about April 29, 2020, Summers submitted the April 24, 2020 BCSD Update to O'Keefe.

55. On or about April 29, 2020, O'Keefe acknowledged receipt of Summers's documents.

56. On or about May 8, 2020, O'Keefe made a paycheck available to Summers for the most recent pay period ("May 8, 2020 FFCRA Paycheck").

57. On or about June 15, 2020, O'Keefe interfered with Summers's FFCRA leave by asking for her return to work date.

58. As of June 15, 2020, Summers's FFCRA leave was not exhausted because her minor child continued to perform online schoolwork and had no suitable person other than Summers to care for her.

59. On or about June 23, 2020, O'Keefe interfered with Summers's FFCRA leave by incorrectly telling Summers that she was no longer eligible for FFCRA leave.

60. On or about June 27, 2020, Summers sent O'Keefe a News 5 Cleveland Internet link supporting Summers's claim that daycares and schools were closed or under a COVID-19 mandate for limited attendance.

61. On or about June 29, 2020, O'Keefe admitted to Summers that Summers had 17 more days of FFCRA leave coverage available.

62. On or about July 12, 2020, Summers emailed O'Keefe a complaint that her FFCRA pay was incorrect.

63. On or about July 14, 2020, Summers emailed O'Keefe a second complaint that her FFCRA pay was incorrect and added that the subsequent paycheck was also incorrect.

64. On or about July 17, 2020, O'Keefe forwarded his bookkeeper's analysis of Summers's FFCRA pay, explaining that Summers was paid FFCRA leave until the school closed on June 3, 2020.

65. Romeo's unilateral decision to end Summers's FFCRA pay on June 3, 2020 constitutes interference with Summers's FFCRA rights.

66. On or about August 10, 2020, Summers emailed O'Keefe about his failure to remedy the June 2020 and July 2020 discrepancies in her FFCRA pay.

67. On or about August 10, 2020, Summers inquired if she still had a job to which to return after her FFCRA was exhausted.

68. On or about August 10, 2020, O'Keefe responded that he forwarded Summers's pay complaints to the bookkeeper.

69. On or about August 10, 2020, O'Keefe stated that Summers's FFCRA leave was exhausted.

70. On or about August 10, 2020, O'Keefe told Summers: "As for your intention to return I will have to get back to you."

71. On or about August 11, 2020, O'Keefe told Summers she was paid based on an average of 37.08 hours per week.

72. On or about August 11, 2020, Summers disputed O'Keefe's calculated per week average and her calculated pay, claiming Romeo's did not calculate her pay correctly.

73. Summers did not hear back from O'Keefe after she disputed Romeo's calculation of her FFCRA pay.

74. The last paycheck Summers received from Romeo's was on July 31, 2020.

75. On or about September 9, 2020, Romeo's reported to Ohio Department of Job and Family Services' Office of Unemployment that Summers refused to work.

76. Romeo's terminated Summers's employment on or about August 11, 2020 because Summers asked for and used FFCRA leave.

77. Romeo's terminated Summers's employment on or about August 11, 2020 in retaliation for Summers's use of FFCRA leave.

78. Romeo's termination of Summers was an adverse employment action.

79. Romeo's purported reason (or lack thereof) for Summers's termination is pretextual.

80. Romeo's actually terminated Summers's employment to interfere with, and in retaliation of, her exercise of FFCRA rights.

81. As a result of Romeo's acts and omissions, Summers has suffered damages.

## COUNT I:  UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

82. Summers restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

83. Pursuant to the FFCRA, covered employers are required to provide employees job-protected, paid leave for qualified medical and family situations related to the COVID-19 pandemic.

84. Romeo's is a covered employer under the FFCRA.

85. Summers was an employee eligible for FFCRA due to her minor child's school closure and due to the duration of her employment.

86. Romeo's terminated Summers's employment on or about August 11, 2020.

87. Romeo's intentionally denied Summers FFCRA in order to interfere with her FFCRA rights.

88. Romeo's intentionally failed to post FFCRA requirements in order to interfere with her FFCRA rights.

89. Romeo's intentionally reduced Summers's FFCRA pay in order to interfere with her FFCRA rights.

90. Romeo's unlawfully interfered with Summers's exercise of her rights under the FFCRA in violation the FFCRA.

91. Romeo's refusal to provide Summers with information pertaining to FFCRA leave violated and interfered with her FFCRA rights.

92. As a direct and proximate result of Romeo's conduct, Summers suffered and will continue to suffer damages.

93. As a direct and proximate result of Romeo's conduct, Summers is entitled to all damages provided for under the FFCRA.

## COUNT II: RETALIATION IN VIOLATION OF THE FFCRA

94. Summers restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

95. As a result of the Romeo's conduct described above, Summers complained to the Department of Labor.

96. Subsequent to Summers's complaint to the Department of Labor, Romeo's intentionally interfered with Summers's FFCRA rights by reducing her pay.

97. Romeo's intentional interference with Summers's FFCRA rights was retaliatory.

98. Romeo's retaliation against Summers constitutes an adverse action against her.

99. Romeo's violated the FFCRA when they retaliated against Summers

100. Summers incurred emotional distress damages as a result of Romeo's conduct described herein.

101. As a direct and proximate result of Romeo's acts and omissions, Summers has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Summers demands from Defendants the following:

(a) Issue an order requiring Romeo's to restore Summers to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Summers for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Summers's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Kevin A. Buryanek*_____
Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:  (216) 291-5744
daniel.dubow@spitzlawfirm.com
kevin.buryanek@spitzlawfirm.com

*Attorneys for Plaintiff Andrea Summers*

## JURY DEMAND

Plaintiff Andrea Summers hereby demands a trial by jury by the maximum number of jurors permitted.

*/s/ Kevin A. Buryanek*_____

Daniel S. Dubow (0095530)

Kevin A. Buryanek (0099300)

**SPITZ, THE EMPLOYEE'S FIRM**